**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABEONA THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> - against - <br><br> EB RESEARCH PARTNERSHIP, INC., AND EPIDERMOLYSIS BULLOSA MEDICAL RESEARCH FOUNDATION, <br><br> Defendants. | Civil Action No. 3:18-cv-10889 (DLC) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO STAY OR DISMISS IN FAVOR OF ARBITRATION**

Christopher J. Gaspar
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000
cgaspar@milbank.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

PROCEDURAL HISTORY............................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

I.      LEGAL ISSUE NO. 1:  PLAINTIFF'S DUTY TO ARBITRATE .................................... 4

II.     LEGAL ISSUE NO. 2:  NEITHER COUNT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................................ 8

CONCLUSION............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apfel v. Prudential-Bache Sec. Inc.*,
   81 N.Y.2d 470 (1993) ...............................................................................................................13

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).....................................................................................................................4

*Bassett v. Electronic Arts, Inc.*,
   93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) ..........................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   126 S. Ct. 1204 (2006)........................................................................................................ *passim*

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
   776 F.3d 126 (2d Cir. 2015).........................................................................................................5

*Cortec Indus., Inc. v. Sun Holdings L.P.*,
   949 F.2d 42 (2d Cir. 1991).....................................................................................................3, 11

*Curry v. Volt Information Sciences, Inc.*,
   No. 07-cv-7158 (DLC), 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008) ......................................6

*Curtis Props. Corp. v. Greif Cos.*,
   628 N.Y.S.2d 259 (App. Div. 1st Dept. 1995).........................................................................9

*Douce v. Origin ID TMAA 1404-236-5547*,
   No. 08-cv-483 (DLC), 2009 WL 382708 (S.D.N.Y. Feb. 17, 2009).......................................13

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
   130 S. Ct. 2847 (2010).....................................................................................................7, 8, 13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000).......................................................................................................................5

*Harrington v. Atlantic Sounding Co., Inc.*,
   602 F.3d 113 (2d Cir. 2010).........................................................................................................5

*Hird v. Imergent, Inc.*,
   No. 10-cv-166 (DLC), 2011 WL 43529 (S.D.N.Y. Jan. 6, 2011) .............................................6

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)......................................................................................................3

*Kopple v. Stonebrook Fund Mgmt., LLC*,
    794 N.Y.S.2d 648 (2005)........................................................................................................10

*Lundell v. Citicorp Inv. Servs., Inc.*,
    No. 94-cv-8562 (WK), 1996 WL 175009 (S.D.N.Y. Apr. 15, 1996)......................................14

*McLaughlin v. MacQuarie Capital (USA) Inc.*,
    No. 17-cv-9023 (RA), 2018 WL 3773992 (S.D.N.Y. Aug. 7, 2018) ......................................13

*Nitro-Lift Tech., L.L.C. v. Howard*,
    133 S. Ct. 500 (2012)....................................................................................................5, 6, 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..........................................................................................................6, 13

**Statutes**

9 U.S.C. § 2..............................................................................................................................1, 4, 7

9 U.S.C § 3...................................................................................................................................13

**INTRODUCTION**

The pleadings and materials referenced therein show that Plaintiff has not stated a claim and this case should be stayed or dismissed in favor of an arbitration requested on October 22, 2018.  Plaintiff's Complaint seeks a ruling that "[t]he arbitration clause under which [Defendant] EBRP seeks to arbitrate is not enforceable *because the contract that contains it* is illusory and void *ab initio* for lack of consideration."  Dkt. No. 1, ¶¶ 96-103 (emphasis added).  But U.S. Supreme Court precedent, interpreting Section 2 of the Federal Arbitration Act, confirms that "unless the challenge is to the arbitration clause *itself*, the issue of the *contract's* validity is considered by the arbitrator in the first instance."  *See*, *e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1209 (2006).  Here, the arbitrator – not the district court – is the one to resolve the type of contract issue Plaintiff presents as its sole basis for impeding the arbitration.

In addition, even if the Court were to determine that it, rather than the arbitrator, should resolve Plaintiff's claim that the contract is void *ab initio*, the Complaint and documents referenced therein fail to state a plausible claim for insufficiency of consideration.

**BACKGROUND**

Plaintiff is a biopharmaceutical company seeking a declaration that it is not required to arbitrate a dispute with Defendant EB Research Partnership.  Dkt. No. 1, ¶ 1.  On October 22, 2018, EBRP requested an arbitration to compensate the foundation for Plaintiff's failure to issue, and lift restrictions on, stock of substantial value.  *Id.*, ¶¶ 9, 83.

EBRP is a not-for-profit corporation located in New York City.  *Cf. id.*, ¶ 7.  EBRP funds research directed at the treatment of epidermolysis bullosa ("EB"), a rare skin condition.  *Id.*, ¶

14.  Defendant Epidermolysis Bullosa Medical Research Foundation also is a not-for-profit corporation, located in California.  *Id.*, ¶ 7.

EBRP generates funds various ways, a very important one of which is the "venture philanthropy" model summarized in the Complaint:

> In exchange for the funding EBRP provides towards such research, it often seeks to obtain the right potentially to participate in, and obtain a financial return from, the commercialization of the EB research it funds.  EBRP has referred to its approach toward the funding of EB research as "venture philanthropy."  EBRP frequently seeks a financial stake in the research it funds.  For example, and as EBRP's website makes clear, in exchange for funding research at an institution, EBRP may obtain from that institution the contractual right to direct to whom the institution licenses the technology resulting from the research, and to participate and benefit financially from the commercialization of that technology.

*Id.*, ¶ 15.

Said another way, this venture philanthropy model looks like a triangle: the *first* side is non-profit Defendants' funding to a university that does EB research and makes inventions; the *second* side is the university's licensing that research and those inventions to a for-profit pharma company to develop a commercial product to treat or cure EB; the *third* side is the pharma company's issuance of stock to Defendants, given Defendants' funding of successful research the pharma company did not need to pay to develop.

An agreement memorializing the obligations for each of these three sides of the triangle is contained or referenced in Plaintiff's allegations.  *First*, both before and after the August 3, 2016 agreements, Defendants funded EB research at Stanford – including research that led to the "EB-101" inventions Stanford licensed to Plaintiff.  Gaspar Decl., Ex. 1.  The license agreement expressly acknowledged Defendants' funding contributions.  *Id.*, p. 1 of 28 ("The invention was made in the course of research supported by the National Institutes of Health, *the EB Medical Research Foundation and the EB Research Partnership*.") (emphasis added).

*Second*, effective August 3, 2016, Plaintiff entered into two license agreements with Stanford: one for the EB-101 technology (mentioned above); one for the EB-201 technology. *Id.*, ¶ 66. Those license agreements are mentioned throughout the Agreement. Dkt. No. 1-9, pp. 1, 4, 24 of 25. Although an integral part of the Agreement, Plaintiff did not attach those license agreements to the Complaint.[1] Defendants submit herewith the unsigned "Execution Copy" made available to them. Gaspar Decl., Ex. 1.

*Third*, also effective August 3, 2016, the parties to this litigation signed a document entitled "Agreement." Dkt. No. 1-9. Both the original and amended forms of the Agreement require Plaintiff to issue and lift restrictions on stock at particular times. Dkt. No. 1-9, pp. 7 of 25; Dkt. No. 1-12. Defendants could then sell the unrestricted stock to fund additional research at institutions including Stanford.

## PROCEDURAL HISTORY

On August 14, 2018, Defendant EBRP formally invoked Section 12.1 of the Agreement and asked Plaintiff for a meeting to resolve disputes. Dkt. No. 1-16, p. 15; Gaspar Decl., Ex. 2 at Arbitration Exhibit 22, p. 2. Although EBRP offered eight dates spread across August and September, *id.*, Plaintiff refused to meet. On October 22, EBRP requested the arbitration. Dkt. No. 1, ¶¶ 9, 83.

---

[1] Plaintiff did not attach to the Complaint (i) the exhibits to the Agreement, including two license agreements Plaintiff entered with Stanford effective the same day as the Agreement, or (ii) the exhibits to EBRP's arbitration request. This Court may consider all of these materials at this stage of the proceeding. *See, e.g.*, *Cortec Indus., Inc. v. Sun Holdings L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (on a motion to dismiss, reviewing court may consider evidence if it was integral to complaint and plaintiff had notice of it); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (plaintiff "cannot evade a properly argued motion to dismiss simply because plaintiff has chosen not to attached the [document] to the complaint or to incorporate it by reference"). Defendants submit the pertinent ones of these documents as exhibits to the Declaration of Christopher J. Gaspar, filed herewith.

On November 21, 2018 – the day before Thanksgiving – Plaintiff filed the present action. Almost two weeks thereafter, Plaintiff moved for a preliminary injunction and for expedited discovery. Dkt. Nos. 13, 18.

## ARGUMENT

If either of the following two legal issues is resolved in Defendants' favor, arbitration should be compelled and this action should be stayed or dismissed.

### I.     LEGAL ISSUE NO. 1:  PLAINTIFF'S DUTY TO ARBITRATE

All parties to this action signed the Agreement. Dkt. No. 1-9, pp. 24-25 of 25. Section 12.2(a) of the Agreement, titled "Arbitration," states in relevant part:

> Except with respect to actions covered by Section 12.2(b), *any claim* or controversy arising in whole or in part under *or in connection with* this Agreement *or the subject matter hereof* that is not resolved pursuant to Section 12.1 will be referred to and finally resolved by arbitration in accordance with the International Institute for Conflict Prevention and Resolution Rule for Non-Adminstered Arbitration (the "Rules") of the Center for Public Resources ("CPR"), as such Rules may be modified by this Section 12.2.

*Id.*, pp. 18-19 of 25 (emphasis added).

Under Section 2 of the Federal Arbitration Act ("FAA"):

> a written *provision* in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

The FAA was enacted "[t]o overcome judicial resistance to arbitration." *Buckeye*, 126 S. Ct. at 1207; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Supreme Court and Second Circuit have emphasized that the Act "declares a national policy favoring arbitration." *See*, *e.g.*, *Nitro-Lift Tech., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012);

4

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015).  Consistent with this policy, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).  Plaintiff thus bears the burden.

Plaintiff does not challenge the arbitration clause itself; rather, Plaintiff challenges the entire contract.  Dkt. No. 1, ¶ 2 ("The arbitration clause under which EBRP seeks to arbitrate is not enforceable because *the contract that contains it* is illusory and void ab initio for lack of consideration"), ¶¶ 96-103 (emphasis added).  But "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Buckeye*, 126 S. Ct. at 1209; *Nitro-Lift*, 133 S. Ct. at 503.

*Buckeye* confirms prior precedent requiring the arbitrator to decide issues like fraud in the inducement of the entire contract:

> Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement *to arbitrate*. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 4-5 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). *The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced)*, or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.[Footnote 1] Respondents' claim is of this second type.  The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.
>
> In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967), we addressed the question of who—court or arbitrator—decides these two types of challenges.  The issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.*, at 402.  Guided by §4 of the FAA,[Footnote 2] we held that "if the claim is fraud in the inducement *of the arbitration clause itself*—an issue which

5

> goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But *the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.*" *Id.*, at 403–404 (internal quotation marks and footnote omitted).

*Id.* (emphasis added); *see also Hird v. Imergent, Inc.*, No. 10-cv-166 (DLC), 2011 WL 43529, at *4 (S.D.N.Y. Jan. 6, 2011) ("because 'a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract … rather than specifically the arbitration clause itself, may be subject to arbitration,' this Court is without jurisdiction to adjudicate the plaintiff's claims in the first instance") (citing *JLM Indus., Inc. v. Stolt Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004)); *Curry v. Volt Information Sciences, Inc.*, No. 07-cv-7158 (DLC), 2008 WL 719214, at *2-3 (S.D.N.Y. Mar. 18, 2008). Applying *Prima Paint*, *Buckeye* "conclud[ed] that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract [and that] [t]he challenge should therefore be considered by an arbitrator, not a court." 126 S. Ct. at 1208.

Here, Plaintiff offers a fraud-in-the-inducement argument, but styles it as an insufficiency-of-consideration claim. Allegations of fraud in the inducement permeate the Complaint, e.g.:

> - "Concannon [Plaintiff's counsel] also informed Gaspar [EBRP's counsel] that 'Abeona has recently come to learn from communications with Stanford University and with EBRP that *the statements that EBRP and EBMRF made to induce Abeona to enter into the Agreement and the [Stock Issuance Agreement] were untrue.*'" Dkt. No. 1, ¶¶ 81-82 (emphasis added).

> - "Neither EBRP nor its counsel informed Abeona, or any representative of Abeona, that EBRP did not possess the 'contractual right' that the draft agreement stated EBRP possessed." *Id.*, ¶ 40.

> - "In fact, EBRP had no contractual rights of ownership or any other type of contractual right relating to the intellectual property referenced in Silver's email dated March 2, 2016, which Silver described therein as 'our best IP.'" *Id.*, ¶ 42.

6

- "Contrary to Silver's representation in his July 8 email, neither EBRP nor EBMRF owned the IP referenced in the draft agreement." *Id.*, ¶ 46.

- "Defendants never told Abeona they did not have the contract right they represented they had respecting the licensing of the referenced technology. To the contrary, Defendants told Abeona that they did have the right, just as the final version of the contract so states." *Id.*, ¶ 50.

- "Abeona only agreed to compensate Defendants in connection with the licenses it obtained from Stanford in reliance upon the many representations EBRP and Silver made that: (1) Defendants had a contract right to direct to whom the intellectual property would be licensed; and (2) Defendants would grant their consent to Abeona licensing the research only in exchange for obtaining compensation from Abeona." *Id.*, ¶ 55; *see also* ¶¶ 57, 59, 61.

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010) does not help Plaintiff. To be sure, *Granite Rock* includes general statements about "formation," e.g.:

- "It is similarly well settled that where the dispute at issue concerns contract *formation*, the dispute is *generally* for courts to decide." 130 S. Ct. at 2855-2856 (emphasis added);

- "[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the *formation* of the parties' *arbitration* agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. *Ibid.* Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.* at 2858 (emphasis added).

But *Granite Rock* does not change the simple rule that an arbitrator, not a court, resolves questions of validity of the contract as a whole, as opposed to validity questions about the arbitration agreement or clause.

Specifically, *Granite Rock* re-affirmed that Section 2 of the FAA requires courts (i) to treat an arbitration clause as "severable from the contract in which it appears" and (ii) to "enforce it [the arbitration clause] according to its terms unless the party resisting arbitration specifically challenges the enforceability *of the arbitration clause itself* ... or claims that the *agreement to arbitrate* was '[n]ever concluded'…." *Granite Rock*, 130 S. Ct. at 2858 (emphasis added).

7

*Granite Rock* approved judicial resolution only of the narrow question of "*when* (not whether) the CBA that contains the parties' arbitration clause was ratified and thereby formed." *Id.* at 2856 (emphasis added).  Meanwhile, *Buckeye* resolved an issue like the one Plaintiff's Complaint presents: "[t]he crux of the complaint is that the contract *as a whole* (including its arbitration provision) is rendered invalid by the usurious finance charge." *Buckeye*, 126 S. Ct. at 1208 (emphasis added).

The arbitrator[2] must decide the Agreement's validity.

## II.	LEGAL ISSUE NO. 2:  NEITHER COUNT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if the Court were to determine that the type of formation issue Plaintiff raises (i.e., insufficiency of consideration / fraud in the inducement of the entire contract) is not for the arbitrator to decide, this matter still must be sent to arbitration because the contract was validly formed and is supported by consideration.  Plaintiff fails to state a claim under Rule 12(b)(6).

Plaintiff's entire Complaint rests on a single argument:  the Agreement as a whole fails for lack of consideration, and thus is not enforceable, because Defendants' obligations were illusory.  That one argument in turn rests on an unsupportable oversimplification of the Agreement.  Specifically, Plaintiff alleges that "the contract's *sole purpose* was to give Abeona the right to certain technology in which Defendants represented they had rights, but in which they actually had no rights." *Cf.* Dkt. No. 1, ¶¶ 2, 97 (emphasis added); *see also* ¶¶ 91-92 ("sole purported consideration" allegedly was "contract right").

---

[2]  Under the applicable arbitration rules here, i.e. CPR's non-administered rules, it is within the arbitral tribunal's authority to determine its own jurisdiction.  *Cf.* 2018 CPR Non-Administered Arbitration Rules 8.1, 8.2.

8

Flaws in Plaintiff's oversimplification of the Agreement reveal themselves without looking beyond the contract itself and the materials referenced in the Complaint. The text of the Agreement alone – more than twenty pages in length, not counting exhibits or the additional contracts integral thereto[3] – belies the notion that the contract had a "sole purpose" or that such purpose was as narrow as Plaintiff suggests.

Sufficient consideration supports the contract. As a *first* example, the Agreement notes the parties' intent to be bound and understanding that sufficient consideration had been exchanged and a contract formed:

> NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows….

Dkt. No. 1-9, p. 1 of 25. Courts "prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound." *Curtis Props. Corp. v. Greif Cos.*, 628 N.Y.S.2d 259, 265-66 (App. Div. 1st Dept. 1995). The allegations of negotiations and contract signing further underscore such an intent. Those negotiations are explained somewhat in Plaintiff's Complaint (e.g., ¶¶ 23-63, 66) and in additional detail in EBRP's arbitration request and exhibits thereto (Dkt. No. 1-16, pp. 6-11; Gaspar Decl., Ex. 2).

As a *second* example, the parties agreed to submit disputes to arbitration, and outlined in considerable detail the parties' respective obligations regarding dispute resolution. Dkt. No. 1-9, pp. 18-19 of 25 (§§ 12.1, 12.2). The parties' mutual promises to arbitrate constitute sufficient consideration. *See, e.g., Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648 (2005); *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95, 104-5 (E.D.N.Y. 2015).

---

[3] The full set of integral contracts includes at least the Agreement, the Stock Issuance Agreement, and the two license agreements between Stanford and Plaintiff.

As a *third* example (more specifically, set of examples), each party – including each Defendant – is obligated not to disclose the other parties' Confidential Information:

> **7.1 Confidentiality**.  (a) During the term of his agreement and for five (5) years thereafter, *each party* (i) shall maintain in confidence all Confidential Information of the other party; (ii) shall not use such Confidential Information for any purpose except as permitted by this Agreement; and (iii) shall not disclose such Confidential Information to anyone other than those of its Affiliates, sublicensees, prospective sublicensees, employees, consultants, agents or subcontractors who are bound by written obligations of nondisclosure and non-use no less stringent than those set forth in this Section 7.2 and to whom such disclosure is necessary in connection with such party's activities as contemplated in this Agreement.  *Each party* shall ensure that such party's Affiliates, sublicensees, prospective sublicensees, employees, consultants, agents and subcontractors comply with these obligations.  *Each party* shall notify the other promptly on discovery of any unauthorized use or disclosure of the other's trade secrets or proprietary information.

Dkt. No. 1-9, p. 11 of 25 (emphasis added).  Section 7.1(b) provides even more obligations the parties owe to one another in the event Confidential Information in possession of a recipient is requested by a third party.  *Id.*, pp. 11-12 of 25.  The Agreement's reciprocal exchanges of numerous non-disclosure obligations are, by themselves, sufficient consideration.

As a *fourth* example, each Defendant agreed to limit its otherwise unrestricted rights to publish papers about the research it had funded:

> "*[E]ach party* shall have the right to review and comment upon any paper proposed for publication by the other party regarding results of the Program hereunder, including oral presentations and abstracts, which utilizes data generated from the Program and/or includes Confidential Information of the other party.  Before any such paper is submitted for publication, the party proposing publication shall deliver a complete copy to the other party at least thirty (30) days prior to submitting the paper to a publisher.

Dkt. No. 1-9, p. 12 of 25 (Section 7.2, entitled "Publications") (emphasis added).  This is a substantial forbearance by Defendants, as they otherwise would be unencumbered in their ability to immediately publish scientific breakthroughs that may lead to a cure for EB and attract

10

additional funds and research partners.  Additionally, Defendants are obligated to review promptly a paper submitted to them by Plaintiff.  *Id.*

As a *fifth* example, Defendants provided funding to Stanford, which funding created the EB-101 inventions that Stanford licensed to Abeona on August 3, 2016.  Stanford's EB-101 license to Plaintiff states, among other things:

> Stanford has an assignment of an invention entitled "Gene Therapy for Recessive Dystrophic Epidermolysis Bullosa using Genetically Corrected Autologous Keratinocytes," described in Stanford Docket S15-479, invented by Paul Khvari, Alfred Lane, Ngon Nguyen, Zurab Siprashvilli, and Jean Tang, employees of Stanford, and by M. Peter Marinkovish, an employee of Stanford and the United States Department of Veterans Affairs ("VA").
>
> The invention was made in the course of research supported by the National Institutes of Health, *the EB Medical Research Foundation and the EB Research Partnership*.  Stanford wants to have the invention perfected and marketed as soon as possible so that resulting products may be available for public use and benefit. …
>
> Abeona's initial focus with respect to Epidermolysis Bullosa will be the development of two Stanford inventions: (1) EB-101 (LZRSE-Col7A1 Engineered Autologous Epidermal Sheets (LEAES) and (2) EB-201 (AAV DJ Col7A1).

Gaspar Decl., Ex. 1, p. 1 of 28 (emphasis added).[4]  Plaintiff thus fulfilled its "venture philanthropy" obligations, as shown in Stanford's license agreement integral to, and effective the same day as, the Agreement between Plaintiff and Defendants.  Stanford did too.

In particular, Plaintiff expressly admits that it did in fact enter into the EB-101 license: "Abeona entered into license agreement with Stanford for the EB-101 and EB-201 technology on

---

[4]  The Stanford agreement forms part of the coordinated and integrated set of contracts entered between Stanford, Plaintiff, and Defendants effective August 3, 2016.  It also is expressly referenced in the Agreement at least on pages 1, 4, and 23 ("**Attachment 4** Stanford License Agreement for EB 101").  The Court may consider it at the Rule 12(b)(6) stage.  *Cortec*, 949 F.2d at 47-48.

August 3, 2016." Dkt. No. 1, ¶ 66.  The importance of this fact cannot be understated.  Plaintiff's only basis for asking the Court to set aside the Agreement, is the notion that Defendants technically lacked the "contractual right to license" EB-101.  Yet Plaintiff admits, as it must, that via the various agreements between Plaintiff, Defendants, and Stanford effective August 3, 2016, Plaintiff in fact *obtained the license to EB-101 from Stanford*.  Defendants could not have misled Plaintiff into believing that they had a "contractual right" to license EB-101 *when Defendants negotiated and contemporaneously entered into those very licenses directly with Stanford* and had exchanged with Stanford and Defendants' numerous drafts of those licenses well before signing the Agreement with Defendants.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Here, it is not plausible that Defendants failed to provide consideration to support the Agreement.  It also is not plausible that Plaintiff was unaware that it needed to contract with Stanford directly to receive a license to EB-101.  Indeed, the Agreement expressly *required* Plaintiff to do so:

> - "**4.2 License Agreements**.  Abeona shall have entered into the Stanford License Agreements attached hereto as Attachment 7 [sic, Attachments 4 & 5]."  Dkt. No. 1-9, p. 8 of 25.
>
> - "'**Stanford License Agreements**' means the license agreements entered into between Abeona and Stanford providing for the license of: (i) the EB-101 (LZRSE-Col7A1 Engineered Autologous Epidermal Sheets (LEAES)) in the form attached as **Attachment 4** and (ii) the AAV-based gene therapy EB-201 (AAV DJ COL7A1) technology to Abeona in the form attached to this Agreement as **Attachment 5**."  *Id.* at p. 4 of 25.

In sum, the Agreement is supported by ample consideration, even though it is enough as a matter of law for the exchange of consideration to be grossly unequal or of dubious value.  Courts do not weight the relative value of the consideration exchanged because "[u]nder the

12

traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 475-6 (1993). And Plaintiff's underlying claim that it did not know that it needed to go directly to Stanford for a license to EB-101 is not plausible.

## CONCLUSION

Four decisions of the U.S. Supreme Court – *Buckeye*, *Prima Paint, Nitro-Lift,* and *Granite Rock* – confirm that Plaintiff's challenge to the validity of the parties' Agreement must be arbitrated, not decided by the Court. In addition, Plaintiff's Complaint fails to state a claim because there is sufficient consideration to support the Agreement. Defendants' obligations are not illusory.

Under Section 3 of the FAA, the court should stay or dismiss this proceeding pending arbitration. 9 U.S.C. § 3 (requiring district court, "on application of one of the parties," to stay action after determining that "any issue" is "referable to arbitration"); *Katz Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015) ("the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration"); *Douce v. Origin ID TMAA 1404-236-5547*, No. 08-cv-483 (DLC), 2009 WL 382708, at *4-5 (S.D.N.Y. Feb. 17, 2009).

It also is appropriate to deny as moot Plaintiff's motion for a preliminary injunction. *See McLaughlin v. MacQuarie Capital (USA) Inc.*, No. 17-cv-9023 (RA), 2018 WL 3773992, at *4 (S.D.N.Y. Aug. 7, 2018); *Lundell v. Citicorp Inv. Servs., Inc.*, No. 94-cv-8562 (WK), 1996 WL 175009, at *1 (S.D.N.Y. Apr. 15, 1996).

Dated:   December 19, 2018               MILBANK, TWEED, HADLEY & MCCLOY LLP


By:   */s/ Christopher J. Gaspar*

Christopher J. Gaspar
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000
cgaspar@milbank.com


*Attorneys for Defendants*

14

**<u>CERTIFICATE OF SERVICE</u>**

I, Christopher J. Gaspar, hereby certify that I caused a copy of the foregoing to be served on all counsel of record for all parties appearing via the CM/ECF system in the above-captioned action.

Dated:   December 19, 2018

MILBANK, TWEED, HADLEY & MCCLOY LLP

By:   */s/ Christopher J. Gaspar*

Christopher J. Gaspar
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000
cgaspar@milbank.com

*Attorneys for Defendants*