**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABEONA THERAPEUTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-10889-DLC |
| ) | |
| EB RESEARCH PARTNERSHIP, ) | |
| INC., AND EPIDERMOLYSIS ) | |
| BULLOSA MEDICAL RESEARCH) | |
| FOUNDATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STAY OR DISMISS IN FAVOR OF ARBITRATION**

Jordan D. Hershman (NY ID 2207660)
David I. Miller (NY ID 2959369)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: 212-309-6000
Fax: 212-309-6001
jordan.hershman@morganlewis.com
david.miller@morganlewis.com

Michael D. Blanchard (SDNY MB 0727)
A. Lauren Carpenter (*pro hac vice* pending)
Christopher M. Wasil (SDNY CW 1017)
MORGAN, LEWIS & BOCKIUS, LLP
One Federal Street
Boston, MA 02110
Tel.: 617-951-8061
Fax: 617-951-7701
michael.blanchard@morganlewis.com
lauren.carpenter@morganlewis.com
christopher.wasil@morganlewis.com

Dated:  January 9, 2019                                      *Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTS AND BACKGROUND .............................................................................. 4

    A.    The Parties ...................................................................................... 4

    B.    Defendants Tell Abeona They Have The
          Contractual Right To License The EB-101 Technology. .................... 4

    C.    Every Draft Of The Parties' Proposed
          Agreements Regarding the Technology Included
          Defendants' Express Representation That They Had The
          "Contractual Right" To Direct The Licensing Of The EB-101 Technology. ........ 5

    D.    The Executed Agreement Represented That
          Defendants Had The "Contractual Right" To License The
          EB-101 Technology, And Imposed No Other Obligations On Defendants........... 6

    E.    Abeona Issues Millions Of Dollars' Worth Of
          Stock To Defendants In Accordance With the Agreement................... 7

    F.    Stanford Informs Abeona And EBRP That
          Defendants Have No Contractual Rights In The EB-101
          Technology, And EBRP Acknowledges That Fact In Writing............................. 8

    G.    EBRP Commences The Arbitration...................................................... 8

ARGUMENT ....................................................................................................... 9

I.    THE COURT, NOT THE ARBITRATOR, MUST DETERMINE WHETHER
       THE AGREEMENT IS VOID AB INITIO FOR LACK OF CONSIDERATION........... 9

II.    ABEONA HAS PLAUSIBLY PLED THAT THE
      AGREEMENT IS VOID AB INITIO FOR LACK OF CONSIDERATION. ................ 14

    A.    The Complaint Sufficiently Pleads That
          Defendants Did Not Have The "Contractual Rights" In
          The Technology That Abeona Alleges Was The Basis Of The Agreement......... 15

    B.    Defendants' Arguments That There Was Consideration Cannot Be
          Decided On A Rule 12(b)(6) Motion And Fail As A Matter Of Law. ................ 17

          1.    Defendants' Pre-Agreement Funding Of
               Research At Stanford Cannot Constitute
               Consideration For The Agreement As A Matter Of Law. ...................... 17

          2.    Recitals Cannot Supply The Missing Consideration. .............................. 18

          3.    Defendants Have Not Established As A Matter Of
               Law That The Parties Intended Ancillary Provisions Of The
               Agreement To Be The Consideration For Abeona's Issuance Of Stock.  19

    CONCLUSION.......................................................................................... 24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adams v. Suozzi*,
    433 F.3d 220 (2d Cir. 2005) ................................................................. 11

*Aretakis v. Caesars Entm't*,
    No. 16 Civ. 8751 (KPF), 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) ................................. 9

*Bassett v. Electronic Arts, Inc.*,
    93 F. Supp. 3d 95 (E.D.N.Y. 2015) ................................................. 22, 23

*Bazzano v. L'Oreal, S.A.*,
    No. 93-CV-7121 (SHS), 1996 WL 254873 (S.D.N.Y. May 14, 1996) ................................. 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 14

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ........................................................................... 12

*Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*,
    88 A.D.2d 461, 453 N.Y.S.2d 750 (2d Dep't 1982) ................................. 13

*Coleman v. System Dialing LLC*,
    No. 15-cv-3868 (DLC), 2016 WL 3387748 (S.D.N.Y. June 17, 2016) ........................ *passim*

*Curry v. Volt Information Sciences, Inc.*,
    No. 07-cv-7158, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008) ......................... 11, 12

*Curtis Properties Corp. v. Greif Cos.*,
    212 A.D.2d 259, 628 N.Y.S.2d 628 (1st Dep't 1995) ........................... 19

*Day v. Fortune Hi-Tech Mktg., Inc.*,
    536 F. App'x 600 (6th Cir. 2013) ...................................................... 11

*Dedon GmbH v. Janus et Cie*,
    411 F. App'x 361 (2d Cir. 2011) ................................................. 1, 10, 11

*DiBlasio v. Novello*,
    344 F.3d 292 (2d Cir. 2003) ............................................................. 17

*Ferguson v. Lion Holdings, Inc.*,
    312 F. Supp. 2d 484 (S.D.N.Y. 2004) ............................................... 13

*Fire Ins. Ass'n v. Wickham*,
    141 U.S. 564 (1891)........................................................................................2, 15, 20

*Gottex Indus., Inc. v. Menczel*,
    No. 93 Civ. 6150 (CSH), 1995 WL 412419 (S.D.N.Y. July 12, 1995)............................15, 21

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010)............................................................................................ *passim*

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    slip op., No. 17-1272 (U.S. Jan. 8, 2019) ............................................................10

*Impact Media Enterprises, LLC v. Fanfare Media Works, Inc.*,
    No. 05-cv-2152-GET, 2007 WL 9701278 (N.D. Ga. Mar. 16, 2007) ..............................21, 22

*Kopple v. Stonebrook Fund Management, LLC*,
    18 A.D.3d 329, 794 N.Y.S.2d 648 (1st Dep't 2005) .........................................................22

*Kopple v. Stonebrook Fund Mgmt., LLC*,
    21 Misc.3d 1144(A), 2004 WL 5653914 (N.Y. Sup. Ct. July 12, 2004)................................22

*Kuchinsky v. Curry*,
    No. 09-cv-299, 2009 WL 1492225 (S.D.N.Y. May 28, 2009).........................................11, 12

*Loft Rest. Assocs., Ltd. v. McDonagh*,
    209 A.D.2d 483, 619 N.Y.S.2d 57 (2d Dep't 1994) ............................................................18

*NASDAQ OMX Grp., Inc. v. UBS Sec.*,
    770 F.3d 1010 (2d Cir. 2014)............................................................................................12

*Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*,
    231 N.Y. 459 (1921) ..........................................................................................................9

*Reeves Entm't Grp. v. LBS Comm's Inc.*,
    No. 91 Civ. 0534 (CSH), 1991 WL 135476 (S.D.N.Y. July 18, 1991) ........................9, 16, 19

*Space Imaging Europe, Ltd. v. Space Imaging L.P.*,
    38 F. Supp. 2d 326 (S.D.N.Y. 1999).............................................................................2, 20

*Sphere Drake Ins. Ltd. v. Clareon Nat'l Ins. Co.*,
    263 F.3d 26 (2d Cir. 2001)..............................................................................................11

*Structured Capital Sols., LLC v. Commerzbank AG*,
    177 F. Supp. 3d 816 (S.D.N.Y. 2016)...........................................................................18, 19

*Turkish v. Kasenetz*,
    27 F.3d 23 (2d Cir. 1994)..................................................................................................13

*UBS Securities LLC v. Voegeli*,
    684 F. Supp. 2d 351 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550 (2d Cir. 2011)......................13

*Umscheid v. Simnacher*,
    106 A.D.2d 380, 482 N.Y.S.2d 295 (2d Dep't 1984).....................................................3, 15, 18

*VRG Linhas Aereas S.A. v.*
    *MatlinPatterson Global Opportunities Partners II L.P.*,
    717 F.3d 322 (2d Cir. 2013)...................................................................................................12

**Other Authorities**

Arbitrator Decide Unconscionability Challenges, 26 Ohio St. J. on Disp. Resol. 1,
    59-60 (2011)..........................................................................................................................9

22 N.Y. Jur. 2d Contracts § 64 (2018)..........................................................................................9

Restatement (Second) of Contracts § 214.....................................................................................20

## PRELIMINARY STATEMENT

Plaintiff Abeona Therapeutics, Inc. ("Abeona") respectfully submits this Opposition to Defendants' Motion to Stay or Dismiss in Favor of Arbitration (the "Motion").  The Motion should be denied for two reasons.

First, under controlling Second Circuit law interpreting the Supreme Court's ruling in *Granite Rock*,[1] it is for the court, not the arbitrator, to decide whether a contract containing an arbitration clause is void *ab initio* because it was not validly formed.  This makes sense:  if the contract is void *ab initio*, so is the arbitration clause contained therein.  Abeona made this point during the first court appearance in this case, specifically citing to the Second Circuit's ruling in *Dedon*[2] interpreting *Granite Rock*.[3]  Abeona also cited *Dedon* in its previously filed motion for preliminary injunction.[4]

Although on notice of that law, Defendants do not even cite, let alone attempt to distinguish, *Dedon* or any other Second Circuit case applying *Granite Rock*.  Nor do they cite this Court's own ruling in *Coleman*, which interprets and applies *Granite Rock* consistently with *Dedon* in ruling that the court, not the arbitrator, must resolve the threshold issue of whether the contract containing the arbitration clause was validly formed.[5]  Defendants' homemade

---

[1] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010).

[2] *Dedon GmbH v. Janus et Cie*, 411 F. App'x 361 (2d Cir. 2011).

[3] *See* Transcript of December 6, 2018 conference at pp. 4–5 (informing Court that under *Granite Rock*, as interpreted by the Second Circuit in *Dedon*, the issue whether a contract is void *ab initio*, as opposed to voidable, is one for the court, not the arbitrator, to decide, and that *Dedon* makes clear that *Granite Rock* reaffirmed longstanding Second Circuit law on that issue).

[4] Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction (Dkt. 15) at 16 ("Whether a contract is void, and its arbitration provision therefore unenforceable, is a question for the court, not the arbitrator. *See Dedon GmbH v. Janus et Cie*, 411 F. App'x at 363 ("where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence")).

[5] *Coleman v. System Dialing LLC*, No. 15-cv-3868 (DLC), 2016 WL 3387748, at *3 (S.D.N.Y. June 17, 2016) (Cote, J.) (holding that "the Court," not the arbitrator, "must decide the threshold issue of whether the [agreement] was supported by consideration").  *See infra* at 11-12.

arguments interpreting *Granite Rock* run directly counter to Second Circuit authority squarely on point, which they fail to address.  They cannot run away from the governing Second Circuit law, and it forecloses their arguments.

Second, Defendants' assertion that Abeona has not plausibly pled that the Agreement lacked consideration is meritless.  Their challenges to the Complaint's allegations as to consideration cannot be resolved in their favor on a motion to dismiss here.

Abeona has more than plausibly pled that the parties intended Defendants' commitment to exercise in Abeona's favor their purported contract rights respecting the EB-101 technology to constitute the consideration tendered in exchange for Abeona's issuance to Defendants of millions of dollars in stock.  Under long-settled law, this intent is dispositive:  "[N]othing is consideration that is not regarded as such by both parties."[6]  And, as Abeona has pled, because Defendants never possessed those contract rights (*see* Complaint ("Cmpl.") at ¶¶35, 42, 76, 84, 91), they provided no consideration, rendering the Agreement void *ab initio*.  Notwithstanding Defendants' disagreement with the Complaint's core allegations regarding the parties' intent,[7] Defendants gain no purchase on a motion to dismiss by disputing the Complaint's allegations. The factual issues at the core of their consideration arguments cannot be resolved under Rule 12(b)(6).

Defendants are also mistaken in claiming that anything they did before they entered into the Agreement—and particularly, their prior funding of research at Stanford University—could serve as consideration for the Agreement:  it is well established that "past consideration" is no

---

[6] *Fire Ins. Ass'n v. Wickham*, 141 U.S. 564, 579 (1891); *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, 38 F. Supp. 2d 326, 337 n.2 (S.D.N.Y. 1999).

[7] *See* Motion at 8 (arguing that the Complaint is based upon "an unsupportable simplification" of the Agreement); *id.* at 9 (arguing that the Agreement's purpose was not "as narrow as Plaintiff suggests").

consideration at all.  *See Umscheid v. Simnacher*, 106 A.D.2d 380, 482 N.Y.S.2d 295, 297 (2d Dep't 1984).  Defendants also get nowhere arguing that contractual recitals, such as recitals of the parties' intent to be bound or of the sufficiency of the consideration, can substitute for actual consideration:  the law is decidedly to the contrary.

Further, there is no merit in Defendants' argument that certain ancillary provisions of the Agreement, such as the arbitration provision, the confidentiality provision, or provisions relating to the publication of research results—which never would have existed but for Defendants' bedrock commitment to exercise their purported contract rights in Abeona's favor—can somehow breathe life into the Agreement.  Indeed, Defendants offer no support for the contention that the parties intended any such ancillary contract provisions to serve as consideration for Abeona's promise to issue to Defendants millions of dollars' worth of stock. Nor have Defendants posited any plausible explanation for why Abeona would have committed to pay them *anything* in exchange for such ancillary contract provisions, if Defendants did *not* purportedly possess the contract rights that the Agreement recites they held, and that they repeatedly claimed to have held.  Obviously, the contention that either Abeona or any other commercially reasonable party would ever have done so is patently absurd.  In any event, the factual question of whether the parties *did* so intend, and whether they *did* form a meeting of the minds on that issue, is not resolvable on a motion to dismiss.

Finally, there is a fundamental fact at the heart of this case that is not in dispute, and that should not be overlooked:  Defendant EBRP admitted in its Demand for Arbitration that Defendants never possessed the contract rights that were *the basis* for Abeona's contractual commitment to pay them millions of dollars in stock.  Cmpl. at ¶84.  Defendants have not suggested to this Court any credible explanation for why Abeona would have agreed to pay

3

*anything* to *them*, in connection with Abeona's licensing of technology from *Stanford*, absent their possession of those contract rights.  Again, particularly in view of this critical undisputed fact regarding the formation of this contract, the issue whether the parties ever formed a contract here involves the resolution of disputed facts, which cannot be done under Rule 12(b)(6).

Accordingly, Defendants' Motion to Dismiss should be denied, and Abeona should not be required to arbitrate this dispute.

## FACTS AND BACKGROUND

### A.    The Parties

Abeona is a clinical-stage biotechnology company developing novel biotechnology therapies for rare genetic diseases.  Cmpl. ¶16.  Defendants are non-profit charitable entities that fund research directed at the treatment of epidermolysis bullosa (EB), a rare genetic skin condition.  *Id.* ¶¶14, 48.

### B.    Defendants Tell Abeona They Have The Contractual Right To License The EB-101 Technology.

In discussions in the fall of 2015, EBRP told Abeona that EBRP used a "venture philanthropy" model, under which EBRP agreed to fund research into a potential treatment for EB, in exchange for obtaining from the educational institution that performed such research the contractual right to direct to which company or companies the intellectual property involved in that research would be licensed.  *Id.* at ¶24.  EBRP also told Abeona that EBRP had funded research at Stanford on the EB-101 technology, and that it had the contractual right to direct that technology to a licensee of its choosing.  *Id.* at ¶27.  EBRP hoped to secure a financial return for its purported contractual rights.  *Id.*  To the extent that Defendants argue that, under their "venture philanthropy" model, their *mere funding of research* at an academic institution gives rise to any legal obligation for anyone subsequently to pay to them anything in connection with

the research they fund, that contention is at odds with the allegations in the Complaint (and with

reality). *Compare* Cmpl. at ¶21 (Abeona *not* obligated to compensate EBRP for licensing

intellectual property from the University of Minnesota because, even though EBRP had provided

research funding to that institution, "EBRP did not have any contractual rights respecting the

intellectual property that Abeona was licensing from the University of Minnesota") *with* Motion

at 2 (describing "the obligations" that supposedly arose merely from Defendants' funding of

research at an academic institution).

**C.    Every Draft Of The Parties' Proposed
        Agreements Regarding the Technology Included
        Defendants' Express Representation That They Had The
        "Contractual Right" To Direct The Licensing Of The EB-101 Technology.**

Abeona was interested in obtaining the right to develop EB-101 and EB-201 technology

to treat EB, and it began negotiating a business arrangement with EBRP, solely based on EBRP's

representations that it had the contractual right to direct the licensing of that technology at

Stanford. *Id*. at ¶28. Abeona and EBRP initially considered an arrangement under which

Abeona would create a subsidiary of which EBRP would own one-third of the stock. *Id*. at ¶29.

But they ultimately agreed to bring the EB-101 and EB-201 product candidates into Abeona by

an agreement that EBRP would direct the technology rights to Abeona under a license agreement

with Stanford in exchange for EBRP receiving stock that Abeona would issue. *Id*. at ¶31. Each

of the many draft agreements they exchanged included—prominently on its *first* page—the

representation that EBRP has the "contractual right to license" the EB-101 technology from

Stanford. *Id*. at ¶¶32-34, 38, 39, 44. During negotiations, EBRP also repeatedly asserted the

rights to the technology, stating, variously, that "you [Abeona] have *our best IP*," that

"EBRP/EBMRF are *co-owners* and funders in this project," and that "EBRP/EBMRF *co-own*

*IP*."[8]  *Id*. at ¶¶41, 45, 48.

Defendants' arguments about whether Abeona should have believed their representations distort the allegations of the Complaint, are not relevant to the issue of consideration, and, in any event, are not resolvable on a motion to dismiss.  Motion at 12.  The Complaint makes clear that Abeona knew that Stanford had the rights respecting the licensing of the technology, but, based on Defendants' repeated representations, believed that Defendants held contract rights to that technology as well, such that Stanford could not license it to anyone without Defendants' consent.  *See, e.g.*, Compl. at ¶27 (EBRP's Alex Silver represented to Abeona that "EBRP, as the funding source for the Stanford research, had the contractual right to direct that EB-101 technology to a licensee of its choosing.").

**D.     The Executed Agreement Represented That
         Defendants Had The "Contractual Right" To License The
         EB-101 Technology, And Imposed No Other Obligations On Defendants.**

In July 2016, Abeona, EBRP, and EBMRF signed a written document titled "Agreement."  *Id*. at ¶51 (the "Agreement").  The Agreement provides that EBRP and EBMRF have the "contractual right to license" the EB-101 technology; as it states:

> EBRP and EBMRF *have the contractual right to license* from The Board of Trustees of the Leland Stanford Junior University ('Stanford') *EB-101* (LZRSE-Col7A1 Engineered Autologous Epidermal Sheets (LEAES)), and *wishes to have Abeona exercise such rights and enter into a license with Stanford for such technology* in the form of license agreement attached to this Agreement as Attachment 6, and perform preclinical development and perform clinical trials of a gene therapy treatment for Epidermolysis Bullosa based upon such in-licensed technology.

*Id*. at ¶52.  The Agreement also provides:

> Abeona shall also enter into a license with Stanford for the AAV-based gene therapy EB-201 (AAV DJ COL7A1) technology in the form of the license agreement attached to this Agreement as Attachment 7, and Abeona shall perform

---

[8] Throughout this opposition, emphasis is added unless otherwise noted.

preclinical development and perform clinical trials of a gene therapy treatment for Epidermolysis Bullosa based upon such in-licensed technology.

*Id*. at ¶53.  The Agreement purported to impose numerous and weighty obligations on Abeona with respect to the development of the technology.  *Id*. at ¶56.  It required Abeona to give EBRP, under certain circumstances, a license to the products that Abeona might develop.  *Id*. at ¶58.  It also provided that, within 10 days after the Agreement's Effective Date, Abeona would issue 500,000 unregistered shares of Abeona common stock to each of EBRP and EBMRF.  *Id*. at ¶60.

Abeona agreed to compensate Defendants in connection with the licenses it obtained from Stanford only because Defendants represented that they: (1) had a contract right to direct to whom the intellectual property would be licensed; and (2) would grant their consent to Abeona licensing the research only in exchange for obtaining compensation from Abeona.  *Id*. at ¶55.  Never before had Abeona paid to any entity, other than the owner of the intellectual property being licensed, any consideration in connection with the licensing of such intellectual property.  *Id*. at ¶54.

### E.    Abeona Issues Millions Of Dollars' Worth Of Stock To Defendants In Accordance With the Agreement.

Abeona entered into license agreements with Stanford for the EB-101 and EB-201 technology effective August 3, 2016.  *Id*. at ¶66.  In accordance with the Agreement, Abeona issued 500,000 shares of common stock to EBRP and 500,000 shares to EBMRF on or about August 3, 2016.  *Id*. at ¶64.  At that time, one million shares of Abeona common stock had a market value of nearly $3.4 million; as of November 19, 2018, the market value was over $7.5 million.  *Id*. at ¶65.  The shares were subject to restrictions that would lapse at different times.  *Id*. at ¶¶60, 62, 63.

**F.      Stanford Informs Abeona And EBRP That Defendants Have No Contractual Rights In The EB-101 Technology, And EBRP Acknowledges That Fact In Writing.**

In late 2017, Stanford informed EBRP that, contrary to Abeona's public disclosures, EBRP and EBMRF did not have contractual rights in the EB-101 technology nor the right to direct the technology, and that they never did. *Id*. at ¶74.  In an email to Stanford dated October 11, 2017, EBRP's founder Alex Silver acknowledged that Defendants did *not* have contractual rights in the EB-101 technology. *Id*. at ¶76.  Notwithstanding that admission, Defendants asked Abeona to remove the restrictions from the shares Abeona had issued to them under the Agreement, and also that it issue additional shares to them. *Id*. at ¶77.  Abeona refused to do so, and stated that Defendants' asserted right to direct the licensing of the technology "was the sole reason that Abeona entered into the Agreement and agreed to transfer to the charities many millions of dollars' worth of Abeona common stock." *Id*. at ¶82.

**G.      EBRP Commences The Arbitration.**

On October 22, 2018, EBRP's counsel sent Abeona a Request for Arbitration invoking §12.2 of the Agreement, which provides that "disputes arising in whole or in part under or in connection with the Agreement between [Defendant] and [Abeona] be referred to arbitration pursuant to the Rules" of the International Institute for Conflict Prevention and Resolution (CPR). *Id*. at ¶83.  In the Request for Arbitration, EBRP again admitted that it "did *not* hold an option and/or license to the EB-101 and EB-201 intellectual property…." *Id.* at ¶84.  Thus, EBRP has unequivocally admitted that Defendants never had the contractual right to direct to Abeona the licensing of the EB-101 intellectual property, which was the only consideration they purported to provide to Abeona in exchange for receiving millions of dollars in Abeona stock.

**ARGUMENT**

I.   **THE COURT, NOT THE ARBITRATOR, MUST DETERMINE WHETHER THE AGREEMENT IS VOID *AB INITIO* FOR LACK OF CONSIDERATION.**

Defendants do not and cannot deny that an argument that a contract was void *ab initio* for lack of consideration challenges the very existence of the contract.  Indeed, it is a matter of hornbook law that a contract that lacks consideration was never a binding contract:

> All contracts must be supported by consideration.  The presence of *consideration* is a *fundamental requisite or necessary ingredient to a binding contract*.  A contract that does not require performance by each party is unenforceable for lack of consideration.  Stated differently, *consideration is an essential element of a simple contract* and is generally necessary to its validity.

22 N.Y. Jur. 2d Contracts § 64 (2018).[9]  And where, as here, an arbitration provision is claimed to be void because the contract in which it is contained never came into existence, controlling United States Supreme Court and Second Circuit precedents require the Court, not the arbitrator, to determine the issue of contract formation.  As the court held in *Granite Rock*:

> [C]ourts should order arbitration of a dispute **only** where the court is satisfied that **neither** the **formation** of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.

561 U.S. at 299 (italics in original; bolding added.)  This language not only mandates that courts must determine whether a contract ever came into being, it indicates that any delegation clause that purports to vest such authority in the arbitrator has no effect.  *See, e.g.*, Karen Halverson Cross, Letting the Arbitrator Decide Unconscionability Challenges, 26 Ohio St. J. on Disp.

---

[9] *See also, e.g.*, *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 461 (1921) (holding that contract never came into existence because the defendant had not promised anything as consideration); *Aretakis v. Caesars Entm't*, No. 16 Civ. 8751 (KPF), 2018 WL 1069450, at *7 (S.D.N.Y. Feb. 23, 2018) (contract void where offer was not supported by valid consideration); *Reeves Entm't Grp. v. LBS Comm's Inc.*, No. 91 Civ. 0534 (CSH), 1991 WL 135476, at *6 (S.D.N.Y. July 18, 1991) (holding contract void for lack of consideration and observing: "[c]onsideration may be found if 'something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him.'") (quoting *Hamer v. Sidway*, 124 N.Y. 538, 545 (1891)).

9

Resol. 1, 59-60 (2011) (language in *Granite Rock* suggests that "a delegation clause that purports to vest in the arbitrator exclusive authority to determine a contract's formation would be invalid").[10]

Defendants are therefore wrong in claiming that the arbitrator must decide Abeona's challenge to the formation of the Agreement, and in suggesting that the delegation provision in the CPR Rules requires such a result. Defendants ignore controlling Second Circuit precedents in claiming that *Granite Rock*'s holding is limited to "the narrow question of *when* (not whether) the CBA that contains the parties' arbitration clause was ratified." Motion at 8 (emphasis in original). The arguments that they have advanced are foreclosed by that controlling Second Circuit authority.

The Second Circuit's ruling in *Dedon*—which Abeona previously cited to this Court—could not be any clearer on this point. There, the Second Circuit stressed: "*Granite Rock* reconfirms this circuit's well-established precedent that where a party challenges *the very existence* of the contract containing an arbitration clause, a court *cannot* compel arbitration *without* first resolving the issue of the contract's existence." 411 F. App'x at 363. *Dedon*'s absolute language—"cannot" compel "without"—refutes Defendants' argument that an arbitrator must decide a contract formation dispute, and also negates their suggestion that a delegation clause could authorize an arbitrator to determine such disputes. *See* Motion at 8 n.2.

---

[10] Indeed, the Supreme Court very recently confirmed yet again that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, slip op. at 6, No. 17-1272 (U.S. Jan. 8, 2019). Other than reaffirming this well-established principle, *Schein* has little application to the instant case because it addresses issues that are not present here, and particularly, a legal principle under which some Circuit Courts of Appeal had allowed courts to determine threshold issues of arbitrability if the courts deemed "wholly groundless" the argument that was proposed for arbitrability. Slip op. at 3, 4, 8. The Second Circuit has never adopted the "wholly groundless" exception and Abeona has not asserted such an exception here.

Leaving no doubt about just how clear cut Second Circuit law is on this issue, when *Dedon* states that *Granite Rock* "reconfirms this circuit's well-established precedent" on this issue, it references and quotes the following prior cases: *Sphere Drake Ins. Ltd. v. Clareon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001) ("If the making of the agreement to arbitrate is placed in issue – as [the party resisting arbitration] attempts to do by alleging that the contracts never came into existence – the court must set the issue for trial."); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) ("where the party resisting arbitration denied the very existence of the agreement setting out the arbitration provision, the district court could not compel arbitration without holding a trial on the issue of the contract's formation"). 411 F. App'x at 363. *See also Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005) ("[i]f the contract embodying a purported arbitration agreement never existed [because a condition precedent never occurred], the arbitration agreement itself does not exist") (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)). *Dedon* and longstanding prior Second Circuit law bar the arguments that Defendants have advanced on this central issue.

Apart from ignoring all of this Second Circuit law directly on point, Defendants also ignore this Court's own ruling in *Coleman*, applying *Granite Rock*. Indeed, in *Coleman* this Court addressed the very issue presented by Defendants' motion here, holding that *Granite Rock* required the court, not the arbitrator, to decide whether the contract is void for lack of consideration. *Coleman*, 2016 WL 3387748, at *3 ("Absent consideration, no contract is formed. Accordingly, the Court must decide the threshold issue of whether the [agreement] was supported by consideration");[11] *see also Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600,

---

[11] Defendants' reliance on *Curry v. Volt Information Sciences, Inc.*, No. 07-cv-7158, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008), to argue that the arbitrator may decide contract formation issues, is misplaced, because that case predated both *Granite Rock* and *Coleman*. Motion at 6. Indeed, in *Coleman*, this Court explicitly recognized that its pre-*Granite Rock* decision in *Kuchinsky v. Curry*, No. 09-cv-299, 2009 WL 1492225, at *3 (S.D.N.Y. May 28,

603 (6th Cir. 2013) (affirming denial of motion to confirm arbitration, stating: "Because the contract lacked consideration, the entire contract, including the arbitration clause, is void and unenforceable").

Defendants err in arguing that *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), authorizes arbitrators to decide any challenge to an agreement "as a whole."  Motion at 8. They ignore the fact that *Buckeye* expressly *declined* to decide whether a court or arbitrator must decide the sort of challenge to the agreement "as a whole" that Abeona has raised here:  that no contract was ever formed because consideration, an essential element to contract formation, was lacking.  As *Buckeye* states, "[t]he issue of the contract's validity [due to a claim of usury] is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded.  Our opinion today addresses *only the former*…."  *Id.* at 444 n.1.  *Granite Rock*, which was decided *after Buckeye*, decided the question that *Buckeye* had reserved—who must determine the issue of whether any agreement ever existed—and it gave that job unequivocally to the courts.  Thus, *Granite Rock,* not *Buckeye*, controls the issue of whether the contract "as a whole" is void due to lack of consideration, and it requires the court to determine that question.[12]

_____

2009), which held that the arbitrator must decide whether there was consideration for the contract, no longer controlled.  *See Coleman*, 2016 WL 3398849, at *3 ("*Kuchinsky*, however, predates the Supreme Court's decision in *Granite Rock Co.*, which clarified that a court must resolve issues relating to the 'formation of a contract.'").  *Curry* is inapplicable for the same reason.

[12] Even absent *Granite Rock*, the Agreement could not justify allowing the CPR to determine whether the Agreement was void *ab initio* because it does not "clearly and unmistakably" delegate that issue to the CPR (an issue that Defendants have waived in any event by failing to brief it in the Motion).  *See VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013) ("The more basic issue, however, of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator.") (internal quotation marks omitted).  And when contract language "at least arguably" carves out a claim from arbitration, the court rather than the arbitrator must decide its arbitrability. *NASDAQ OMX Grp., Inc. v. UBS Sec.*, 770 F.3d 1010, 1031-32 (2d Cir. 2014).  The arbitration clause in the Agreement here is not only "arguably," but obviously, ambiguous as to whether the parties intended to delegate issues of contract formation to the CPR.  Section 12.2(a) of the Agreement provides for arbitration of claims arising under the Agreement "*[e]xcept* with respect to actions covered by Section 12.2(b)," and §12.2(b), in turn, provides that "[n]othing in this Section 12.2 will prevent a party from resorting to judicial proceedings if: (i) interim relief *from a court* is necessary to prevent serious and *irreparable injury* to such party…."  It is well established that a

There is also no merit in Defendants' attempt to escape *Granite Rock* and Second Circuit precedent by trying to reframe Abeona's claim that the Agreement is void *ab initio* for lack of consideration as an arbitrable "fraud-in-the-inducement" claim.  Motion at 6.  A fraud in the inducement claim is entirely distinct from a claim that a contract is void *ab initio*:  it is a tort claim that seeks damages, including punitive damages, for detriment incurred in reliance on a misrepresentation.  *See Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir. 1994); *Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 453 N.Y.S.2d 750, 754 (2d Dep't 1982).  And unlike a contract that never came into effect because an essential element to contract formation, such as consideration, was lacking, "[a] contract procured by fraud is not void, but voidable"; that is, the wronged party may choose to affirm or disaffirm it.  *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 498 (S.D.N.Y. 2004); *see also Bazzano v. L'Oreal, S.A.*, No. 93-CV-7121 (SHS), 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996) ("[i]t is well-settled in New York that where a party is fraudulently induced to enter into a contract, the contract is voidable at the instance of the defrauded party").

Whether Abeona has grounds to do so or not—and Defendants appear to concede it does—Abeona has not pled a claim for fraud in the inducement.  That is not the basis on which it has sought to enjoin the conduct of the arbitration.  Rather, Abeona has pled a claim seeking a declaratory judgment that the Agreement is void *ab initio* for lack of consideration.  Under controlling Second Circuit law, which this Court applied in *Coleman*, it is for the Court, not the arbitrator, to adjudicate that claim.

---

party suffers irreparable injury from being forced to arbitrate an issue that is not arbitrable, and such injury supports injunctive relief to prevent such a result.  *See UBS Securities LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550 (2d Cir. 2011).  The plain language of the Agreement therefore indicates that the parties intended the Court, not the arbitrator, to determine matters that may cause a party irreparable harm, such as whether the party is being required to arbitrate non-arbitrable claims.  As such, the Agreement cannot be deemed to "clearly and unmistakably" indicate the parties' intent to delegate issues of arbitrability to the CPR.

## II.   ABEONA HAS PLAUSIBLY PLED THAT THE
## AGREEMENT IS VOID *AB INITIO* FOR LACK OF CONSIDERATION.

In their Motion, Defendants also contend that Abeona's Complaint does not state a claim upon which relief may be granted.  Under well-settled law, however, the Complaint will withstand Defendants' Motion if it pleads "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Complaint does just that:  it alleges that the sole basis for Abeona's agreement to issue stock to the Defendants—*i.e.*, the bargained-for exchange that induced Abeona's promise—was Defendants' "contractual right" to direct the licensing of the EB-101 technology.  *See, e.g.*, Cmpl. ¶¶2, 92.  And Abeona has more than plausibly alleged that this consideration does not exist—indeed, Defendants have unequivocally admitted that they did not have the contractual rights that they offered to induce Abeona's performance.  The Complaint therefore states a claim upon which relief may be granted.

Defendants' contentions to the contrary do more to undermine their arguments than support them.  As explained by Defendants, their "venture philanthropy model" takes the form of a triangle, the three "sides" of which are: (1) Defendants provide funding to a university for EB research and inventions (a transaction to which Abeona is not a party); (2) the university licenses the resulting research and inventions to a for-profit company (which happened here in a contract between Stanford and Abeona, not Defendants); and (3) the for-profit company issues stock to Defendants.  *See* Motion at 2.  As noted above, because Defendants' arguments on this point run counter to the allegations of the Complaint, they have no weight on a motion to dismiss.  *See supra* pp. 4-5.  There is no allegation in the Complaint that, merely as a result of their funding of research at a university, Defendants succeed to a right to be issued stock from a for-profit company to which a university licenses technology arising from such research.  Putting that issue

aside, Defendants' argument highlights several flaws in their motion.

First, even if Defendants' arguments were taken at face value, they fail because "past consideration" does not constitute any consideration, as a matter of law.  *See Umscheid*, 482 N.Y.S.2d at 297.  Defendants are contending that their prior funding of research at Stanford constitutes consideration for Abeona's agreement, years later, to pay to them millions of dollars in stock.  Second, Defendants' argument that a mere recital in the Agreement of the sufficiency of consideration is enough to save the contract is simply contrary to law.  Third, noticeably absent from Defendants' triangular theory of a contract are any claims that confidentiality provisions, arbitration provisions, or provisions concerning publications about research results somehow serve as the consideration in exchange for which they are paid.  Because "nothing is consideration that is *not regarded as such by both parties*" (*Wickham*, 141 U.S. at 579), the otherwise void Agreement is not saved by its mere inclusion of ancillary provisions.  They were not any part of the consideration in exchange for which Abeona agreed to issue to Defendants millions of dollars in stock.  While the notion that Abeona intended to make that vast payment to Defendants in exchange for these ancillary contract provisions is beyond far-fetched, it is also a factual dispute that cannot be resolved on this motion.  *See, e.g., Gottex Indus., Inc. v. Menczel*, No. 93 Civ. 6150 (CSH), 1995 WL 412419, *3 (S.D.N.Y. July 12, 1995) (denying plaintiff's motion for summary judgment to enforce promissory note as against defendant's claim of lack of consideration where it was "not clear" that plaintiff's promise to abstain from bringing civil action against defendant "was made in consideration of [defendant's] payment").

**A.  The Complaint Sufficiently Pleads That Defendants Did Not Have The "Contractual Rights" In The Technology That Abeona Alleges Was The Basis Of The Agreement.**

Contrary to Defendants' assertion, Abeona has plausibly pled that the Agreement lacked consideration.  Abeona has plausibly pled that Abeona agreed to compensate Defendants in

connection with licensing the technology from Stanford only because Defendants represented
they had a contractual right to direct to whom the intellectual property would be licensed, and
that Defendants would grant their consent to Abeona licensing the technology only in exchange
for obtaining compensation from Abeona.  *See* Cmpl. at ¶¶54, 55, 57, 61.  Abeona has also
plausibly pled (indeed, Defendants unequivocally admit) that Defendants did not have the
contractual rights they claimed to have to license the technology.  *See id.* at ¶¶35, 42, 76, 84, 91.
Thus, contrary to Defendants' assertion, Abeona has plausibly pled that the parties intended
Defendants' contractual rights in the technology to be the consideration for Abeona's promises
to issue stock to Defendants, and, because that consideration never existed, a contract never
came into being.  The Complaint states a claim upon which relief may be granted.  *See, e.g.*,
*Reeves*, 1991 WL 135476, at *6 (contract was "void for lack of consideration" where the
plaintiff promised to forbear exercising an option it supposedly owned under a separate contract,
but the option had already expired).

Defendants' arguments to the contrary—*i.e.*, that Abeona's "only basis for asking the
Court to set aside the Agreement is the notion that Defendants technically lacked the 'contractual
right to license' EB-101," and that it is "not plausible that [Abeona] was unaware that it needed
to contract with Stanford directly to receive a license to EB-101" (Motion at 12)—are based on a
distortion of the Complaint.  Abeona never pled that it was unaware that it needed to enter into a
licensing agreement with Stanford, but rather pled that it believed, based on Defendants'
representations, that they possessed the contractual right to direct to whom Stanford would
license the technology.[13]  Moreover, any issue regarding the alleged plausibility of Abeona's

---

[13] As alleged throughout the Complaint, the purported contractual right at issue is a right to *direct* to whom Stanford
may license the EB-101 technology.  *See, e.g.*, Cmpl. at ¶24 (under "venture philanthropy" model, EBRP
"obtain[ed] from the educational institution that performed such research the contractual right *to direct to which
company or companies the intellectual property involved in that research would be licensed*"); *id.* at ¶27 (Alex

beliefs raises factual issues which cannot be resolved at this stage. *See DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003) ("[A] disputed issue of fact . . . is inappropriate to consider in the context of a Rule 12(b)(6) motion").  Abeona has more than plausibly alleged that the bargained-for exchange which induced Abeona to issue stock to Defendants was Defendants' promise to exercise in Abeona's favor purported contract rights they claimed to have had.

**B.      Defendants' Arguments That There Was Consideration Cannot Be Decided On A Rule 12(b)(6) Motion And Fail As A Matter Of Law.**

Defendants' arguments directed at the merits of the case—*i.e.*, claims that there was consideration for the Agreement—all fail.

**1.      Defendants' Pre-Agreement Funding Of Research At Stanford Cannot Constitute Consideration For The Agreement As A Matter Of Law.**

Defendants are mistaken in claiming that the Agreement was supported by consideration because Defendants provided funding to Stanford to support "the EB-101 inventions that Stanford licensed to Abeona on August 3, 2016."  Motion at 11 (citing licensing agreement between Abeona and Stanford).  The Agreement does not purport to obligate Defendants to provide such funding.  While Defendants make this factual contention, which is improper on a Motion to Dismiss, even the license agreement upon with they rely makes clear that Defendants funded the research *before* the parties executed—or even negotiated—the Agreement.  As that agreement states—in the *past tense*—the referenced technology "*was* made in the course of

---

Silver of EBRP repeatedly represented to Mark Ahn and Steven Rouhandeh of Abeona that EBRP "had the contractual right *to direct that EB-101 technology to a licensee of its choosing*"); *id.* at ¶28 (Abeona entered negotiations "on the basis of EBRP's representations that it had the contractual right to *direct the licensing* of that technology at Stanford"); *id.* at ¶¶47–48 (prior to execution of the Agreement, Abeona's counsel sought clarification from EBRP as to which entity "ha[d] *rights to direct*" the EB-101 technology, to which Silver responded that Defendants were "co-owners and funders" of the project); *id.* at ¶82 (Abeona's counsel explained to EBRP's counsel that, prior to the execution of the Agreement and stock issuance, "EBRP repeatedly represented to Abeona personnel that EBRP and EMBRF had the contractual right *to dictate to whom Stanford would license the EB-101 technology*").

research *supported* by the National Institutes of Health, the EB Medical Research Foundation and the EB Research Partnership."  Motion at 2, 11 (emphasis altered).[14]  In other words, Defendants had *already* provided Stanford with funding for the research before they entered into the Agreement with Abeona.

Under well-settled New York law, "past consideration is *not consideration*."  *Umscheid*, 482 N.Y.S.2d at 297.  "A promise supported by past consideration is unenforceable"; "since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise."  *Id.* (internal quotation marks omitted).  For that reason, the funding Defendants provided to Stanford for the EB-101 technology "cannot be said to have been bargained for in exchange for" Abeona's issuance of stock to Defendants.  *Id.*  Moreover, Defendants do not even attempt to explain how their funding of research at Stanford supposedly constitutes consideration provided *to Abeona*, years after they funded the research at Stanford.  For these reasons, this argument does not support the grant of the Motion to Dismiss.

### 2.    Recitals Cannot Supply The Missing Consideration.

Defendants are also mistaken in contending that the Agreement's recitals of the parties' "intent to be bound" supply the missing consideration.  Motion at 9.  Such recitals have no talismanic significance, and "cannot be used to modify or create substantive rights not found in the contract's operative clauses."  *Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 826 (S.D.N.Y. 2016) (internal quotation marks omitted).  As the court held in

---

[14] Defendants attempt to obscure the *ex-ante* nature of their performance by claiming that they funded "EB research" at Stanford "both before and after" the Agreement was signed.  Motion at 2.  Any allegation that Defendants funded research related to the EB-101 technology after signing the Agreement is not found in the Complaint, the exhibits to the Complaint, or even the documents submitted by Defendants with their Motion to Dismiss, and thus they cannot be considered at this stage.  And even if the Court could consider the allegation, such funding could not constitute consideration for the Agreement because the Agreement does not purport to impose any obligation on Defendants to provide such funding.  *See Loft Rest. Assocs., Ltd. v. McDonagh*, 209 A.D.2d 483, 619 N.Y.S.2d 57, 58 (2d Dep't 1994) (no contract formed where promise to forbear exercise of option "constituted nothing more than a gratuitous and legally unenforceable promise which was unsupported by valid consideration").

18

*Structured Capital*, a contract's "recital of consideration … does not preclude the parties from disputing consideration and does not in itself give the promise any validity." *Id.  See also Reeves*, 1991 WL 135476, at \*6 ("*Even if an intent to be bound is found*, the contract is void for lack of consideration.").[15]

### 3.    Defendants Have Not Established As A Matter Of Law That The Parties Intended Ancillary Provisions Of The Agreement To Be The Consideration For Abeona's Issuance Of Stock.

There is no merit in Defendants' assertion that the Complaint should be dismissed because ancillary provisions in the Agreement—such as the arbitration provision, confidentiality provision, or a provision relating to the publication of product development results—can supply the missing consideration.  Motion at 9–11.  Remarkably, Defendants claim that even though they have admitted they never had the contractual right they promised to enforce in Abeona's favor, these wholly peripheral provisions supply the consideration for Abeona's issuance of millions of dollars of stock—and, indeed, do so as a matter of law.  Their argument runs afoul of basic principles of contract law, as well as the standards for a Rule 12(b)(6) motion to dismiss.

As a matter of law, to constitute consideration for the Agreement, the parties must have *intended* these provisions to serve as the consideration for the Agreement.  Since at least the 19th century, the U.S. Supreme Court has so held:

> Thus in Philpot v. Gruninger, 14 Wall. 570, 577, it is stated that '*nothing is consideration that is not regarded as such by both parties*.'  To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one.  *The mere presence of some incident to a contract which might, under certain circumstances, be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract.*

---

[15] Defendants cite *Curtis Properties Corp. v. Greif Cos.*, 212 A.D.2d 259, 628 N.Y.S.2d 628 (1st Dep't 1995), but that case is inapposite, as neither party argued that the legal requirement of consideration was satisfied simply because the parties had negotiated the brokerage agreement, or because the recitals in the contract made reference to "good and valuable consideration."  Motion at 9.

*Wickham*, 141 U.S. at 579.[16]  Further underscoring the paramount importance of the parties' intent in determining the existence of consideration in a contract, the *Wickham* court held that the trial court *properly considered extrinsic evidence bearing on such intent*:  "[S]uch testimony is admissible to show the circumstances under which the instrument was executed, or that it was in fact without consideration."  *Id.* at 577.  This remains the law today:  "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . lack of consideration[.]"  Restatement (Second) of Contracts § 214.  In the circumstances presented by the allegations made here, and Defendants' dispute of those allegations, the resolution of those factual disputes regarding the intent of the parties would likely necessitate the evaluation of extrinsic evidence.  That plainly cannot be done on a motion to dismiss.

In any event, Defendants point to nothing in, or even extrinsic to, the Agreement that suggests the parties intended any of these tangential aspects of the Agreement—such as the arbitration provision, the confidentiality provision, or provisions relating to the publication of research results—as consideration for Abeona's promise to issue Defendants millions of dollars' worth of stock.  Not only is the Agreement devoid of any language that could support this suggestion, Abeona has alleged—and plausibly pled—that the consideration for its promise to compensate Defendants with stock was intended by both parties to be Defendants' purported contractual rights to direct the licensing of the technology.  *See* § IIA above.  Defendants' mere disagreement with this allegation provides no support for the grant of a motion to dismiss.  *See* Motion at 8 (arguing that the Complaint is based on "an unsupportable simplification" of the

---

[16] *See also Space Imaging*, 38 F. Supp. 2d at 337 n.2 ("[N]othing is consideration that is not regarded as such by both parties.") (internal quotation marks omitted).

Agreement); *id.* at 9 (arguing that the Agreement's purpose was not "as narrow as Plaintiff suggests"). The issue whether the parties intended Defendants' mere promise to arbitrate disputes to constitute the consideration tendered in exchange for Abeona's issuance to Defendants of millions of dollars in stock is not one that can be resolved as a matter of law. *See, e.g.*, *Gottex*, 1995 WL 412419, *3 (denying plaintiff's motion for summary judgment to enforce promissory note as against defendant's claim of lack of consideration because "it is not clear" from contract language that plaintiff's promise not to bring a civil action against defendant "was made in consideration of [defendant's] payment").

Further, as to the merits of Defendants' consideration arguments, *Impact Media Enterprises*, *LLC v. Fanfare Media Works, Inc.*, No. 05-cv-2152-GET, 2007 WL 9701278 (N.D. Ga. Mar. 16, 2007), is illustrative. There, the plaintiff, the licensor of a patent, brought claims against a licensee for, among other things, breach of contract. The parties had entered an agreement that gave defendant an exclusive license to advertise and sell the plaintiff's product in exchange for royalty payments for a term of six years. However, the plaintiff had the right to license the sale of the product only for four years, not the entire term of the agreement. The court granted summary judgment dismissing the plaintiff's breach of contract claim on the grounds that the license agreement lacked consideration and was therefore void. In so ruling, the court stated that "[i]t goes without saying that a man cannot sell that which he does not own." *Id.*, at *3. Summary judgment was required because "*the License Agreement purports to convey rights to defendant from plaintiff which the plaintiff does not possess*," making the agreement void for lack of consideration. *Id.* A review of the license agreement at issue in *Impact Media* reveals that it too contained *both* a mandatory arbitration provision and a confidentiality provision. *See id.*, Dkt. 1 at 19-27. These ancillary provisions did not supply the missing

21

consideration.

Defendants cite no authority that supports their argument that subordinate provisions such as those regarding confidentiality or publications can constitute the consideration for an agreement to issue millions of dollars' worth of stock—let alone do so as a matter of law. Indeed, the cases they do cite in support of their argument are readily distinguishable. In *Kopple v. Stonebrook Fund Management, LLC*, 18 A.D.3d 329, 794 N.Y.S.2d 648 (1st Dep't 2005), a former employee of a fund management company brought claims against the company for unpaid compensation and age discrimination.[17] The employer sought to compel arbitration based on a stand-alone arbitration agreement the plaintiff had signed two months before being discharged. *Id.*, at \*3. The Supreme Court rejected the plaintiff's argument that the stand-alone arbitration agreement lacked consideration because "his employment did not continue for a substantial period of time" after signing the agreement. *Id.* The Appellate Division affirmed, stating, "[t]he parties' mutual promises to arbitrate constituted consideration sufficient to support *the arbitration agreement*." *Kopple*, 794 N.Y.S.2d at 648. No party argued that the mutual promises in the arbitration agreement could supply the consideration for any other agreement.[18]

*Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015), is similarly inapposite. *Bassett* was a putative class action filed on behalf of consumers who purchased video games sold by the defendant. The defendant advertised that certain of its games were

---

[17] Because the Appellate Division's opinion in *Kopple* consists of four sentences and no recitation of facts, a review of the underlying decision of the Supreme Court is needed to determine the facts of the case. *Kopple v. Stonebrook Fund Mgmt., LLC*, 21 Misc.3d 1144(A), 2004 WL 5653914 (N.Y. Sup. Ct. July 12, 2004).

[18] Although this Court in *Coleman* appeared to rely on *Kopple* for the assertion Defendants make here, a closer review of *Kopple* shows that it does not support the assertion that mere mutual promises to arbitrate in an embedded arbitration provision are consideration for the larger agreement. Further, *Coleman* did not rely only on the arbitration provision, but rather identified other substantial consideration in the contract at issue there, specifically, the plaintiff's grant of an exclusive right to license recordings in exchange for the defendant's obligation to pay royalties from any potential sales. *See Coleman*, 2016 WL 3387748, at \*3.

enabled for online play, but sometime after the plaintiff purchased those games, the defendant removed their online play capabilities, allegedly in violation of state false advertising statutes (among other claims). *Id.* at 97-100. The defendant moved to compel arbitration, relying on an arbitration provision in the Terms of Service presented to the plaintiff upon his registration for online gaming services *after* the plaintiff had already purchased the game. *Id.* at 100. Unlike in the instant case, the plaintiff in *Bassett* did not seek a declaration that the underlying transaction was void *ab initio*, as the purchase of video games for money was plainly supported by consideration. The plaintiff did not argue, and the court did not rule, that the mutual promises to arbitrate in the Terms of Service constituted consideration for the underlying purchase of the video games. *Bassett* therefore does not support Defendants' argument here.

Defendants' view of the law would also lead to absurd results. By way of example, under Defendants' argument, if a home buyer signed a purchase and sale agreement ("P&S Agreement") to pay $5 million for a luxury home for which the seller lacked title, his obligation to pay the seller $5 million would nonetheless be enforceable as supported by consideration, so long as the P&S Agreement contained an arbitration clause. That is obviously not the law, nor should it be.

At bottom, none of the cases on which Defendants rely support the grant of their Motion to Dismiss, as they are all factually distinguishable. Instead, a trier of fact will need to resolve the issue of whether the parties both intended any of the ancillary contract provisions to which Defendants point to have constituted the consideration in exchange for which Abeona agreed to issue millions of dollars in stock to Defendants.

In sum, Abeona has plausibly pled that consideration was lacking for the Agreement. In addition, the consideration arguments Defendants have advanced, while meritless, give rise to

factual disputes that cannot be resolved under Rule 12(b)(6).  Accordingly, their Motion to

Dismiss should be denied.

## <u>CONCLUSION</u>

For the reasons stated above, Abeona respectfully requests that this Court deny

Defendants' motion to stay or dismiss in favor of arbitration.


Dated:  January 9, 2019                              Respectfully submitted,

                                                                  /s/ Jordan D. Hershman
                                                                  Jordan D. Hershman (NY ID 2207660)
                                                                  David I. Miller (NY ID 2959369)
                                                                  MORGAN, LEWIS & BOCKIUS, LLP
                                                                  101 Park Avenue
                                                                  New York, NY 10178-0060
                                                                  Tel.: 212-309-6000
                                                                  Fax: 212-309-6001
                                                                  jordan.hershman@morganlewis.com
                                                                  david.miller@morganlewis.com

                                                                  Michael D. Blanchard (SDNY MB 0727)
                                                                  A. Lauren Carpenter (*pro hac vice* pending)
                                                                  Christopher M. Wasil (SDNY CW 1017)
                                                                  MORGAN, LEWIS & BOCKIUS, LLP
                                                                  One Federal Street
                                                                  Boston, MA 02110
                                                                  Tel.: 617-951-8061
                                                                  Fax: 617-951-7701
                                                                  michael.blanchard@morganlewis.com
                                                                  lauren.carpenter@morganlewis.com
                                                                  christopher.wasil@morganlewis.com

                                                                  *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2019, I caused the foregoing document to be

electronically filed with the Clerk of Court using the CM/ECF system.


Dated:  January 9, 2019                           /s/ Jordan D. Hershman
                                                  Jordan D. Hershman