UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
ABEONA THERAPEUTICS, INC.,               :
                                         :
                          Plaintiff,     :    18cv10889(DLC)
             -v-                         :
                                         :    OPINION AND ORDER
EB RESEARCH PARTNERSHIP, INC., and       :
EPIDERMOLYSIS BULLOSA MEDICAL RESEARCH   :
FOUNDATION,                              :
                                         :
                          Defendants.    :
                                         :
---------------------------------------- X

APPEARANCES

For the plaintiff:
David I. Miller
Jordan D. Hershman
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178

Michael D. Blanchard
Christopher M. Wasil
A. Lauren Carpenter
Morgan, Lewis & Bockius, LLP
One Federal Street
Boston, MA 02110

For the defendants:
Christopher J. Gaspar
Amina J. Akram
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005

DENISE COTE, District Judge:

    This litigation arises out of a dispute between plaintiff Abeona Therapeutics, Inc. ("Abeona") and defendants EB Research

1

Partnership, Inc. ("EBRP") and Epidermolysis Bullosa Medical Research Foundation ("EBMRF," and together, "Defendants"), who agreed to collaborate regarding the development of biotechnical therapies for a rare skin condition. After Defendants initiated arbitration proceedings, Abeona filed this action seeking, <u>inter alia</u>, a declaratory judgment that it is not required to arbitrate. The Defendants have moved to compel arbitration or, in the alternative, to dismiss the complaint. For the following reasons, Defendants' motion to compel is granted.

## **Background**

The following facts are taken from the complaint and the parties' July 2016 agreement attached thereto. Abeona, a Delaware corporation with its principal place of business in Cleveland, Ohio, is a clinical-stage biopharmaceutical company that develops biotechnology therapies for rare genetic diseases. Defendants, New York and California not-for-profits with principal places of business in New York and Los Angeles, respectively, are involved in funding research directed at the treatment of epidermolysis bullosa, a rare skin condition.

In July 2016, Abeona and Defendants executed an agreement (the "Agreement") to collaborate with respect to the development of certain treatments for epidermolysis bullosa. The Agreement includes several relevant provisions. First, it includes a

representation by Defendants that they "have the contractual right to license" certain technology from the Board of Trustees of the Leland Stanford Junior University ("Stanford").  Second, it includes a provision expressing Defendants' intention "to have Abeona exercise such rights and enter into a license with Stanford for such technology."  Third, it includes a promise by Abeona to provide 500,000 shares of Abeona stock to Defendants.

The Agreement also contains the following arbitration clause in Section 12.2(a):

> Except with respect to actions covered by Section 12.2(b), any claim or controversy arising in whole or in part under or in connection with this Agreement or the subject matter hereof that is not resolved pursuant to Section 12.1 will be referred to and finally resolved by arbitration . . . .

Neither Sections 12.1 nor 12.2(b) are relevant to Defendants' motion.[1]

In January 2018, EBRP's founder, Alex Silver, asked Abeona to remove restrictions from approximately 40,000 shares of Abeona stock issued pursuant to the Agreement and to issue an additional 125,000 shares pursuant to a related option agreement

---

[1] Section 12.1 describes the parties' commitment to attempt to settle any claims or controversies through good faith negotiations and consultations.  Section 12.2(b) concerns claims or controversies "involving infringement or misappropriation of any Intellectual Property Right of a party," as well as procedures for interim relief.

with Stanford.  Abeona refused, claiming it had no such obligations under either contract.  On October 22, Defendants sent Abeona a request for arbitration, invoking the arbitration clause in Section 12.2(a) of the Agreement.

On November 21, Abeona filed this lawsuit to stop arbitration, arguing that Section 12.2(a) is not enforceable because the Agreement itself "is illusory and void <u>ab initio</u> for lack of consideration."  Specifically, Abeona claims that, notwithstanding their representations to the contrary, Defendants did not "have the contractual right to license" the relevant technology from Stanford, and that Defendants provided no additional consideration in exchange for the shares of Abeona stock.  On December 19, Defendants filed a motion to compel arbitration and stay or dismiss the complaint.  The motion was fully submitted on January 14, 2019.

## **<u>Discussion</u>**

Under Section 2 of the Federal Arbitration Act ("FAA"),

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA was enacted to counteract "widespread judicial hostility to arbitration agreements."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).  The Supreme Court has repeatedly instructed that Section 2 of the FAA reflects "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract."  Id. (citation omitted); see also Nitro-Lift Techs., L.L.C. v. Howard, 568 U.S. 17, 20 (2012); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  "This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).  Consistent with this policy, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

When considering a motion to compel arbitration, courts must resolve two questions: first, "whether there exists a valid agreement to arbitrate at all under the contract in question," and second, "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129,

135 (2d Cir. 1996). "In interpreting a validly formed arbitration agreement, [courts] apply a presumption of arbitrability if the arbitration agreement is ambiguous about whether it covers the dispute at hand." Lloyd v. J.P. Morgan Chase & Co., 791 F.3d 265, 269 (2d Cir. 2015) (citation omitted). This presumption, however, does not apply to the threshold question of whether the parties agreed to arbitrate at all, which "is strictly a matter of consent." Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 299 (citation omitted). "In other words, while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 215 (2d Cir. 2014) (citation omitted).

With respect to the first inquiry, there are two types of challenges to the validity of arbitration agreements. Buckeye Check Cashing, Inc. v. Cardenga, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." Id. "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Id.

As a general matter, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator" in the first instance. Id. at 449. "That is because § 2 [of the FAA] states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained." Rent-A-Center, 561 U.S. at 70 (emphasis in original). Thus, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and it may be enforced notwithstanding "a party's challenge to another provision of the contract, or to the contract as a whole." Id. at 70-71 (citation omitted).

Where a party brings a challenge to the very formation of a contract containing an agreement to arbitrate, however, merely severing the arbitration clause may not resolve the threshold question of whether the parties ever "concluded an agreement to arbitrate." Granite Rock, 561 U.S. at 300 (citation omitted); see also Buckeye, 546 U.S. at 444 n.1 ("The issue of the contract's validity is different from the issue of whether any agreement . . . was ever concluded."). It is well settled that "[a]rbitration is strictly a matter of consent," and "arbitrators derive their authority to resolve disputes only

7

because the parties have agreed in advance to submit such grievances to arbitration." Granite Rock, 561 U.S. at 296, 299 (citation omitted). Thus, even where an arbitration provision is severable, "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Id. at 297. Such issues may include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." Buckeye, 546 U.S. at 444 n.1 (citation omitted). When resolving these issues, "courts generally should apply ordinary principles that govern the formation of contracts." Granite Rock, 561 U.S. at 296 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Once a court is satisfied that an agreement to arbitrate exists, the court must turn to the second inquiry of "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Nat'l Union, 88 F.3d at 135. As with the first inquiry, courts should construe the scope of an arbitration provision according to ordinary state-law contract principles. Granite Rock, 561 U.S. at 296. As discussed above, however, the FAA requires courts to apply a

8

broad presumption in favor of arbitration. Lloyd, 791 F.3d at 269.

The Agreement contains a broad arbitration clause which must be enforced. The Agreement is a written contract, executed by Abeona and the Defendants. There is no assertion that the signatories lacked the authority or mental capacity to commit the parties to the obligations imposed by the Agreement. It is also apparent that "the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Nat'l Union, 88 F.3d at 135. According to the complaint, Defendants' arbitration demand arises in part out of Abeona's alleged failure to remove restrictions from approximately 40,000 shares of Abeona stock issued pursuant to the Agreement. It also arises out of Abeona's alleged failure to issue an additional 125,000 shares of stock pursuant to a related options agreement with Stanford. Both of these claims fall squarely within the broad language of the parties' agreement to arbitrate, which mandates arbitration for "any claim or controversy arising in whole or in part under or in connection with this Agreement or the subject matter hereof."

Abeona claims that the Agreement as a whole fails for lack of consideration and therefore the arbitration clause is unenforceable. But whether a contract <u>as a whole</u> lacks

consideration is irrelevant to a court's inquiry on a motion to compel. As set forth in Buckeye and reaffirmed in Granite Rock, "courts must treat the arbitration clause as severable from the contract in which it appears." Granite Rock, 561 U.S. 298-99. After severing the arbitration provision from the remainder of the contract, a court's only task is to "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Id. at 297 (emphasis added).

Even construing Abeona's argument as a specific challenge to the Agreement's arbitration clause, it is far from clear that a claimed lack of consideration in an arbitration provision raises a question of "formation" that a court must resolve before enforcing the agreement to arbitrate. See Granite Rock, 561 U.S. at 296, 303 n.9 (stating that a formation dispute "is generally for courts to decide," and noting the significance of the three limited examples in Buckeye, 546 U.S. at 444 n.1 (emphasis added)); Allstate Ins. Co. v. Toll Bros., Inc., 171 F. Supp. 3d 417, 425 (E.D. Pa. 2016) (questioning, but not deciding, whether "a lack of consideration [is] tantamount to" the limited examples in Buckeye). But see Noohi v. Toll Bros., Inc., 708 F.3d 599, 613-14 (4th Cir. 2013) (finding non-mutual arbitration clause unenforceable for lack of consideration).

Assuming for the purposes of this discussion that courts, not arbitrators, must decide this question, Abeona's attempt to override its arbitration agreement fails. The severed arbitration clause in Section 12.2(a) of the Agreement is supported by adequate consideration.

Under New York contract law, "mutual promises to arbitrate constitute[] consideration sufficient to support [an] arbitration agreement." Kopple v. Stonebrook Fund Mgmt., LLC, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005); see also Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 758 (2d Cir. 1967) ("[Appellant's] promise to arbitrate was sufficient consideration to support [appellee's] promise to arbitrate."). Section 12.2(a) of the Agreement, which contains the parties' arbitration agreement, includes such mutuality of obligation. It mandates arbitration of "any claim or controversy" arising in connection with the Agreement, regardless of which party seeks to enforce arbitration. The arbitration provision in Section 12.2(a) is therefore supported by adequate consideration. Because there is no allegation that other elements of contract formation are absent, Abeona and Defendants executed "a valid agreement to arbitrate." See Nat'l Union, 88 F.3d at 135. Accordingly, Abeona's claims with

11

respect to the remainder of the contract are for the arbitrator to decide.

The Supreme Court's decision in Granite Rock does not compel a different result, as Abeona suggests. In Granite Rock, the Supreme Court held that the District Court was required to consider whether a collective bargaining agreement ("CBA") containing an arbitration provision was "ratified" by a union vote prior to the date of the labor dispute. Granite Rock, 561 U.S. at 292. That is because, unlike in Buckeye, where "the parties agreed that they had concluded an agreement to arbitrate and memorialized it as an arbitration clause in their loan contract," "a union vote ratifying the CBA's terms was necessary to form the contract" -- including "the specific arbitration clause" that the petitioner sought to enforce. Id. at 297, 300, 303 (citation omitted).[2] By contrast, a failure of consideration in a contract as a whole does not render void a severable arbitration provision that is itself supported by adequate consideration.

---

[2] In this regard, whether the union "ratified" the CBA is analogous to "whether the alleged obligor ever signed the contract." See Buckeye, 546 U.S. at 444 n.1. Both conditions are necessary for the formation of the parties' agreement to arbitrate.

This reading of Granite Rock and Buckeye is consistent with the Second Circuit's controlling decisions on the matter.[3] In Ipcon Collections LLC v. Costco Wholesale Corp., for example, the Second Circuit affirmed that "a limited exception to the requirement of arbitration for general contract challenges may be available where a party questions whether a contract was ever made." 698 F.3d 58, 61 (2d Cir. 2012) (citation omitted). But the court refused to apply that "limited exception" notwithstanding the appellant's allegations that the appellee "committed 'fraud in the factum,' a claim that would mean the contracts were void ab initio." Id. (citation omitted). Instead, the court construed the appellant's claim as one for "fraud in the inducement," and applied Buckeye's rule that the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 61- 62 (quoting Buckeye, 546 U.S. at 445).[4] Where a party challenges

---

[3] Abeona relies heavily on a summary order: Dedon GmbH v. Janus et Cie, 411 F. App'x 361 (2d Cir. 2011). The Court of Appeals has advised litigants that rulings by summary order do not have precedential effect.

[4] Abeona's failure-of-consideration claim could likewise be construed as "fraud in the inducement." The complaint includes allegations that "statements that [Defendants] made to induce Abeona to enter into the Agreement . . . were untrue." It further alleges that "Abeona only agreed to compensate Defendants in connection with the licenses it obtained from Stanford in reliance upon the many representations [Defendants]

13

the existence of a specific agreement to arbitrate, however, the Second Circuit has noted that courts must resolve the issue. See VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P., 717 F.3d 322, 325 n.2 (2d Cir. 2013) ("The more basic issue, however, of whether the parties agreed to arbitrate in the first place is one only a court can answer . . . .").[5]

While it is unnecessary in this case to decide whether an alleged failure of consideration in a contract containing an arbitration clause may ever present an issue of contract formation for the court to resolve, there are strong policy reasons that suggest such cases will be rare. Virtually any breach of contract claim can be characterized as a failure to

---

made [regarding their] contractual right to direct to whom the intellectual property would be licensed."

[5] Abeona's reliance on this Court's prior decision in Coleman is misplaced. See Coleman v. System Dialing LLC et al., 16cv3868(DLC), 2016 WL 3387748 (S.D.N.Y. June 17, 2016). In that case, discovery was ordered to determine whether the plaintiff ever signed the agreement containing the arbitration clause. Id. at *1. After discovery resolved the issue, plaintiff argued that the entire agreement lacked consideration, so the arbitration clause could not be enforced. Id. at *3. Having undertaken substantial discovery with respect to the question of arbitrability already, the Opinion proceeded to evaluate the sufficiency of consideration. In so doing, it noted that "both parties mutually obligated themselves to arbitrate disputes concerning [the agreement], which is itself sufficient consideration." Id.

provide consideration.  The Second Circuit has made clear that Congress enacted the FAA "to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." Nicosia, 834 F.3d at 229 (citation omitted).  That purpose is not served by allowing parties to evade a validly executed arbitration clause by construing a challenge to the underlying contract as one going to the "formation" of the agreement to arbitrate.  Nor would such a rule accord with Section 2 of the FAA, which upholds the validity and enforceability of an agreement to arbitrate "without mention of the validity of the contract in which it is contained." Rent-A-Center, 561 U.S. at 70 (emphasis in original).

## Conclusion

Defendants' December 19 motion to compel arbitration is granted.  This action is stayed pending the outcome of arbitration proceedings.

Dated:    New York, New York
          February 14, 2019

```
                              _____
                                    DENISE COTE
                              United States District Judge
```

15